Lewis *v.* Lyons et al.

Thomas Lewis, Administrator *de bonis non* of Samuel Lyons, deceased, Plaintiff in Error, *v.* Mary Lyons et al., Defendants in Error.

| | |
|---|---|
| 13 | 117 |
| 123 | 249 |
| 13 | 117 |
| 28a | 31 |
| 13 | 117 |
| 46a | 457 |
| 13 | 117 |
| 59a | 521 |
| 13 | 117 |
| 66a | 532 |

### ERROR TO SANGAMON.

An administrator has the legal title to the personal estate of the decedent, as a trustee, and for a particular purpose; but when the debts are paid, the residue of such estate belongs to the heir.

A court of equity is not bound at all times to enforce a strict legal right, but will protect the equitable title when good conscience requires.

A court of chancery will not require an heir to pay over money to an administrator, when such administrator has no debts to pay, nor any use to make of it connected with the estate, merely that he may retain it for his own benefit, or be paid his costs and commissions.

Lewis, as administrator *de bonis non*, filed his bill in the Sangamon Circuit Court, setting forth : — That on the 21st of March, 1839, one Linus Graves purchased of I. and P. Irwin and Samuel Lyons, certain lots in Iles's Addition to Springfield, for $1000, for which Graves executed his notes for the purchase-money, secured by a mortgage on the same lots. The purchase-money was not paid according to the conditions of the mortgage, and Lyons and the Irwins proceeded by bill to foreclose it. A sale of the lots was decreed for the payment of the purchase-money. This decree was not executed; and at the March term, 1837, of the same court, it was revived, and the lots were ordered to be sold, and Josiah Francis was appointed commissioner to execute the decree. Francis was directed to pay one half of the proceeds of the sale of the lots to Mary Lyons, the widow and heir at law of Samuel Lyons, deceased. That Samuel Lyons died intestate, and P. A. Saunders was appointed administrator to his estate, and administered, for a time, and then resigned ; that afterwards the County Court of Sangamon county issued letters of administration *de bonis non* of the said estate, to the complainant Lewis ; that the estate of Lyons has never been settled, and is indebted to various individuals, and, as is believed, to an amount more than sufficient to consume the half of the proceeds derived from the sale of said lots, ordered to be paid to said Mary Lyons, and that *it is* known

that the deceased had not any other property with which to pay said debts; that Mary Lyons received in possession a large amount of personal property belonging to her husband's estate, which she has not accounted for; that the order of the court did not require her to give a refunding bond; and if she should be solvent there would be delay, and a necessary resort to litigation, to force her to refund; that the order of the court was made under a mistake, or proper knowledge of all the facts of the case. An injunction was prayed for, to restrain Francis and all others from paying over the proceeds of the sale of said lots to said Mary Lyons, until after another order of court on this bill; and that the proceeds of the sale of said lots be paid over to Lewis as such administrator *de bonis non*, &c. The injunction was allowed.

The decree of the court, referred to in the bill of Lewis, which directed the lots to be sold to satisfy the mortgage given for the purchase-money, and which Lewis makes a part of his bill, sets forth, that Mary Lyons filed her answer to that bill, admitting its allegations, but setting up a tax-title to the lots, which she says was in her possession. Irwin then filed his amended bill, setting forth that he and the said Mary Lyons were tenants in common, when she acquired that tax-title, which amended bill she traversed by a general denial. The cause was heard, a revival of foreclosure was decreed, and the commissioner ordered to sell said lots; by which decree it is stated, " And it appearing to the court, from the parol statement of the parties, that said Mary paid $50 for a tax title, and has, since the year 1843, paid the taxes amounting to $24.50, it is ordered, after the payment of costs, &c., that said Mary be paid $60.62, being one half of said $50, with interest from 1st November, 1843, and one half the taxes, on said lots since paid by her, and also the amount of debt and interest due upon decree in complainants' bill mentioned, be divided equally between said Irwin and said Mary Lyons, and residue to be reported to the court."

Mary Lyons, in answer to the bill of Lewis, admits the execution and foreclosure of the mortgage; the revival of the decree; the appointment of the commissioner; the sale of one of the lots for $275, and that a deed was given therefor; the sale of the

Lewis *v.* Lyons et al.

other for $300, for which no deed was given or money paid; admits the death of Lyons and appointment of Saunders as administrator, and that Saunders filed his resignation February 17th, 1848; but states that records of the probate court do not show that his resignation was accepted, nor that any final settlement was ever made with Saunders. Answer denies that he was ever legally discharged from his duties as administrator. Admits the appointment of Lewis administrator *de bonis non;* but charges, that it was wrongfully done, and that no money should be paid to him as administrator.

Answer admits, that when Lewis was appointed there were a few debts against Lyons's estate, which she has since discharged with her own money, amounting to more than $200, and files transcript from probate court, showing estate not to be indebted in any way. The answer further alleges, that she has paid several hundred dollars of Lyons's debts with her own funds; admits that she received several articles of personal property from estate, and, that though she was perhaps entitled to most of it as her separate property, yet, she paid far more than the value of all the debts of said Lyons after his decease.

Alleges, in answer, that she considers herself the legal owner of said lots, and that they should not be sold for the benefit of the estate of said Lyons; and files a deed from Philip C. Latham and wife, who had bought them for taxes; that Latham, in due time, procured a tax-deed, and transferred, by deed, his interest to her the said Mary Lyons, and she prayed a dissolution of injunction.

Afterwards Josiah Francis filed his separate answer, admitting all the facts as charged and set forth in complainant's bill.

On the 29th November, 1837, of the Sangamon Circuit Court, DAVIS, Judge, presiding, a motion to dissolve the injunction was entered by Mary Lyons, which was sustained, and injunction was dissolved. Lewis brings the cause to this court.

STUART & EDWARDS, for plaintiff in error.

J. C. CONKLING, for defendants in error.

Resignation of former administrator must not only be ten-

dered, but must also be accepted, before the County Court had power to appoint another. 1 Rev. Stat. of 1845, p. 543, § 34.

Such resignation and acceptance should appear of record, and if the County Court had no authority to appoint another administrator, his letters of administration were *ipso facto* void, and any other court can so determine. 4 Denio, 90 ; 3 Dana, 129; 6 Ired. 31.

The demand of administrator is barred by lapse of time and negligence. 1 Gilman, 149.

The record shows that the property in question did not belong to Lyons at the time of his death, and was not a part of his estate. 2 Gilman, 449.

When the injunction was dissolved there were no demands against the estate, and no reason why the injunction should continue.

CATON, J.   We shall not stop to inquire whether Lewis was properly appointed administrator or not, because we are of opinion, after the most careful examination of this record, that this bill ought not to be maintained.   Nor will we stop to inquire how far, upon the final hearing, the blanks in the bill should prejudice the claim of the complainant to the relief sought, but will proceed at once to the merits of the case, as presented by this record.

In 1842, Lyons died.   Previous to his death the mortgage had been foreclosed, upon a bill filed by Lyons and Irwin ; but no sale was made under that decree of foreclosure.   In February, 1843, Saunders was appointed administrator, and tendered his resignation in February, 1848.   What steps he took towards the settlement of the estate during the five years that he was administrator, this record does not inform us.   In March, 1851, the decree of foreclosure was revived, upon a bill filed for that purpose by Irwin, to which Graves, the mortgagor, and Mrs. Lyons, the widow of the other mortgagor, were defendants.   That decree of revivor finds and declares that Mrs. Lyons is the only heir to her late husband, and directs that one half of the money due upon the mortgage, and to be raised under the decree, be paid to her as such heir.   After this, and nearly nine years after the death of

Lyons, Lewis was appointed administrator, and files this bill, alleging that there are debts due from the estate, and asking that the money, which was ordered by the decree of revivor to be paid to Mrs. Lyons as heir, may be paid to him as administrator. Upon the hearing, it appeared that certain claims had been filed in the County Court, against the estate; but the records of that court showed that all of those claims had been paid by Mrs. Lyons, and, so far as appears, from her own private funds. The bare statement of this case is sufficient to show, that no court of conscience should ever interfere to divert this fund from the lawful heir, to the hands of the administrator. That she is the sole heir of her husband, was established by the decree of revivor, and the complainant does not intimate that such was not the fact. Had it not been true, he might have so alleged; for as his predecessor was not a party to the bill of revivor, he may not have been precluded from controverting the facts found and established by that decree. As it is, we take it to be established, that she is the only heir, and as such she is entitled to the entire estate, both real and personal, after the payment of the debts. The administrator, it is true, may have the legal title to the personal estate; not, however, in his own right, but as trustee, and for a particular purpose. When the debts are paid, the heir is the *cestui que trust*, and as such, is entitled to the surplus of the assets after the debts are paid. There being no debts unpaid in this case, the heir has the entire equitable interest in all of the estate, both real and personal. This court is not bound at all times to enforce a strict legal right, but will always look to and protect the equitable title where good conscience requires it. Such is emphatically this case, in our apprehension. It would be a mockery of justice for a court of chancery to require the heir to pay over the money to the administrator, when he has no debts to pay and no legitimate use for it, merely for the purpose of allowing him to retain and use it for perhaps two years, and then to pay it back to the heir, retaining his costs and commissions, — costs uselessly made, and commissions earned by no beneficial services, but in a business which he seeks, through an expensive suit in chancery, and which can benefit himself

alone. The naked question is, Shall Mrs. Lyons be deprived of the use of this money, for it may be two years or more, and then be compelled to pay Lewis for keeping it from her; or, in other words, shall Lewis be permitted to use her money for that time, and then make her pay him for this worse than useless service? This is what Lewis calls relief, and seeks it in a court of equity. On the other hand, it would better become a court of chancery to interfere, and prevent the administrator from asserting his legal right, for so unreasonable a purpose. I speak of this case as it stood at the time of the hearing, when the complainant was asking for a decree, and not as it was presented when the bill was filed.

Let the decree of the Circuit Court be affirmed.

*Decree affirmed.*