[No. B212757. Second Dist., Div. Three. June 11, 2010.]

GLORIA M. LUNA et al., Plaintiffs and Appellants, v.
ERICA BROWNELL, Individually and as Co-trustee, etc., et al., Defendants
and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for
publication with the exception of parts 1. and 2. of the Discussion.

**COUNSEL**

Raphael A. Rosemblat for Plaintiffs and Appellants.

Frank J. Valdez; Hollins & Levy, Byron S. Hollins and Laura M. Levy for Defendants and Respondents.

OPINION

**KITCHING, J.—**

## INTRODUCTION

This case presents the following issue: If real property is transferred by a quitclaim deed to the trustee of a trust that has not been formed, is the deed void? We shall conclude that under the circumstances of this case, the deed is not void and is deemed delivered as of the date the trust was formed.

This is a family dispute over real property located at 112 South Russell Avenue in Monterey Park (the Property). Plaintiffs and appellants Gloria M. Luna (Gloria) and Ann Brownell (Ann) are the sisters of Alfonso Luna (Al), now deceased. Defendant and respondent Erica Brownell (Erica) is Ann's granddaughter and the successor trustee of the Luna Trust (the Trust). Defendant and respondent Frank J. Valdez (Valdez) was Al's attorney.

Shortly before Al's death, Gloria and Ann signed four grant deeds transferring the Property to Al as an individual and as the trustee of the Trust. Al then executed a quitclaim deed transferring his interest in the Property as an individual to himself as trustee of the Trust. Al subsequently created the Trust.

Less than a week after Al's death, plaintiffs commenced this action. Plaintiffs challenged the validity of the grant deeds and quitclaim deed on numerous grounds. After a bench trial, the superior court entered a judgment in defendants' favor. We affirm.

In the published portion of this opinion, we reject plaintiffs' argument that the quitclaim deed was void because the Trust was not formed as of the date the deed was signed. In the unpublished portion of this opinion, we shall address plaintiffs' remaining arguments.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 1983, Al executed an individual grant deed transferring the Property to Gloria, Ann, Marcus M. Luna (Marcus),[1] and himself, as joint tenants. This deed was recorded on September 24, 1984.

---

[1] Marcus is the brother of Al, Gloria, and Ann. Marcus was initially a plaintiff in this action. However, before trial Marcus requested a dismissal of his claims without prejudice. The trial court granted the request.

There apparently was no consideration for the transfer of most of Al's interest in the Property to his siblings. The siblings understood that the Property belonged to Al, but it was placed in all of their names so that if Al died, the Property would simply pass on to his sisters and brother.[2]

On August 8, 2006, Gloria and Ann each executed two grant deeds. One set of grant deeds transferred plaintiffs' interest in the Property to Al as an individual. The other set of grant deeds transferred plaintiffs' interest in the Property to Al as the trustee of the Trust. Attorney Valdez drafted two sets of deeds on Al's behalf because he "wasn't sure which type of transfer should occur at that time." There was no consideration given to plaintiffs for executing the grant deeds.

The grant deeds were executed during a meeting at the home of Gloria and Ann. At that meeting, Gloria, Ann, Al, Valdez's paralegal David J. Pantoja (Pantoja), notary public Steven Perez (Perez), and a driver employed by Valdez were present. Pantoja advised Gloria and Ann that they would be signing deeds giving the Property back to Al. Gloria and Ann stated that the Property was Al's, and that he could do what he wanted with it.

On August 13, 2006, Al executed a quitclaim deed transferring his interest in the Property as an individual to himself as trustee of the Trust.

On August 29, 2006, Al executed the declaration of trust for the Trust. The declaration of trust stated that Al was the trustee, and that the successor trustees were Valdez, Valdez's law office, and Erica. The beneficiaries of the Trust were Erik Brownell, Sr., Erik Brownell, Jr., and Erica.[3]

On September 8, 2006, the grant deeds transferring plaintiffs' interest in the Property to Al as trustee of the Trust were recorded. The quitclaim deed transferring Al's interest in the Property, as an individual to Al, as trustee of the Trust, was also recorded. The grant deeds transferring plaintiffs' interests in the Property to Al as an individual were not recorded.

Al died on September 19, 2006. Less than a week later, on September 25, 2006, plaintiffs filed the complaint in this action.

The complaint set forth causes of action for (1) revocation/cancellation on grounds of lack of intent/mistake, (2) revocation on grounds of undue

---

[2] Plaintiffs dispute the purpose of the transfer. We shall address the conflicting evidence regarding disputed factual issues relating to various deeds conveying the Property in an unpublished portion of this opinion.

[3] Erik Brownell, Sr., is Ann's son and Al's nephew. Erik Brownell, Jr., is Erik Brownell, Sr.'s son.

influence, (3) revocation on grounds of fraud, (4) negligent misrepresentations, (5) quiet title, (6) constructive trust for real property, (7) personal property claims, (8) breach of fiduciary duty, (9) conspiracy, (10) permanent injunction, and (11) accounting. At trial, plaintiffs pursued the first, third, fourth, fifth and sixth causes of action, but did not pursue the remaining causes of action.

The superior court held a one-day bench trial on June 23, 2008. On August 19, 2008, the court issued a ruling in defendants' favor.

In its ruling, the court summarized the testimony of the witnesses at the trial, including the testimony of notary public Perez. The court noted that Perez testified as follows: "Mr. Perez heard Mr. Pa[n]toja explain the Grant Deeds to Ms. [Gloria] Luna and Ms. [Ann] Brownell. He also heard Mr. Pa[n]toja explain why the deeds were needed. Mr. Perez heard Mr. Pa[n]toja explain to Ms. Luna and Ms. Brownell that they were releasing any interest they might have in the Property. Mr. Perez believed that the women were not asserting any interest in the Property. They also voiced no objection to signing the deeds."

The court found Perez to be "credible." By contrast, the court "found the testimony of both plaintiffs unreliable and often not credible."

With respect to plaintiffs' argument that the deeds were void because the Trust was not formed on the date the deeds were executed, the court stated the following: "[I]n a situation where a property transfer has been made to one who has no legal existence, there is authority in some jurisdictions that provides as a matter of equity, such a deed is valid between the grantor and the grantee only but not as to third parties. [Citations.]"

After the court entered judgment for defendants, plaintiffs filed a timely appeal.

## CONTENTIONS

Plaintiffs make three major arguments. The first is that the grant deeds executed on August 8, 2006, were void under the doctrine of undue influence. The second is that the trial court erroneously failed to find certain facts that were allegedly favorable to plaintiffs. Finally, plaintiffs argue that the trial court erroneously failed to find that the grant deeds and the quitclaim deed were void as a matter of law because the Trust did not exist when the deeds were executed and physically given to Valdez's law firm.

## DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3.  *The Conveyance of the Property to the Trust is Not Void*

■ "A deed does not transfer title to the grantee until it has been legally delivered." (3 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds, § 8:36, p. 66, fn. omitted; see also Civ. Code, § 1054.) "Delivery is a question of intent." (*Osborn v. Osborn* (1954) 42 Cal.2d 358, 363 [267 P.2d 333].) "A valid delivery of a deed depends upon whether the grantor intended that it should be presently operative, and a manual transfer is not conclusive evidence of such intention." (*Huth v. Katz* (1947) 30 Cal.2d 605, 608 [184 P.2d 521].) Although physical delivery of a deed raises an inference that the grantor intended to immediately transfer title, that inference may be overcome by evidence showing a contrary intent. (*Helm v. Hess* (1955) 131 Cal.App.2d 251, 254 [280 P.2d 155].) The trier of fact must determine intent by reviewing all of the surrounding circumstances of the transaction. (*Perry v. Wallner* (1962) 206 Cal.App.2d 218, 221 [23 Cal.Rptr. 352] (*Perry*).) "Where there is substantial evidence, or where an inference or presumption may be drawn from the evidence to sustain the court's finding of delivery or nondelivery, the finding will not be disturbed on appeal." (*Ibid.*)

"In addition, acceptance by the grantee is necessary to make a delivery effective and the deed operative. Whether the deed was accepted by the grantee so as to complete a transfer of title to him is likewise a question of fact for the trial court." (*Perry, supra,* 206 Cal.App.2d at p. 222.)

Here, the trial court found that on August 8, 2006, "after understanding that Al wanted his property in his own name for purposes of creating a trust, the plaintiffs did not dispute his ownership, were advised they could seek counsel, did not appear confused, and voluntarily executed the [grant] deeds" conveying the Property to Al, as an individual, and Al, as trustee of the Trust. As we explained in an unpublished portion of this opinion, there was substantial evidence supporting these findings. Further, it is undisputed that on August 8, 2006, in Al's presence, plaintiffs physically gave the grant deeds to Al's agent. This is substantial evidence that those grant deeds were accepted by the grantee.

Plaintiffs contend that, as a matter of law, there was no legal delivery of the grant deeds because as of August 8, 2006, the Trust did not exist.

*See footnote, *ante,* page 668.

Defendants do not dispute that the Trust was not in existence until August 29, 2006, when Al executed the declaration of trust.[7] However, defendants contend that the grant deeds were nevertheless valid because it was the intent of plaintiffs to return title to the property to Al, as an individual or as trustee of the Trust.

As the trial court recognized in its minute order, "even assuming that the deeds transferring the property to [Al, as trustee of the Trust] were void because the [Trust] did not yet exist, the deeds transferring the property to [Al] as an individual [were] effective in transferring the property interests of Ms. Brownell and Ms. Luna to Al. (The fact that those deeds may not have been recorded is of no consequence to effectively transfer title. [Citations.].)"[8] The question before this court therefore is whether the quitclaim deed executed by Al on August 13, 2006, transferring the Property from Al as an individual to Al as trustee of the Trust was void because the Trust did not exist on the date the deed was executed.

We have not found a California case that directly addresses this issue. However, there is substantial law regarding similar fact patterns in other jurisdictions.

In *John Davis & Co. v. Cedar Glen # Four, Inc.* (1969) 75 Wn.2d 214 [450 P.2d 166] (*John Davis*), the appellants challenged the validity of a quitclaim deed transferring real property to a corporation. The appellants argued that the deed was void because it was executed and recorded prior to the date the corporation filed its articles of incorporation, i.e., prior to the date the corporation became a legal entity. (*Id.*, 450 P.2d at p. 170.)

The Supreme Court of Washington rejected the appellants' argument. The court stated: "Although it is true as a general rule that a deed is void if the named grantee is not a legal entity, the facts of this case fall within an exception to the rule. [¶] A deed to a corporation made prior to its organization, is valid between the parties. Title passes when the corporation is legally incorporated. This is particularly true as against one who does not hold superior title when the corporation goes into possession under the deed." (*John Davis, supra*, 450 P.2d at p. 170.)

In *Heartland v. McIntosh Racing Stable* (2006) 219 W.Va. 140 [632 S.E.2d 296] (*Heartland*), real property was conveyed by grant deed to Heartland, a

---

[7] "The five elements required to create an express trust are (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary." (*Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 337 [126 Cal.Rptr.2d 763].) It is undisputed that the declaration of trust dated August 29, 2006, created the Trust.

[8] See *Goodman v. Goodman* (1931) 212 Cal. 730, 733 [300 P. 449].

limited liability company, about six months prior to the dates the articles of organization for Heartland were filed. Heartland was named the grantee on the deed because at the time the deed was executed and delivered, the purchasers of the property intended to form Heartland. (*Id.*, 632 S.E.2d at p. 299.) The grantor of the deed argued that the property was not conveyed to Heartland because Heartland was not formally organized as a legal entity on the date the deed was signed. (*Id.* at p. 301.)

After reviewing relevant case law, the Supreme Court of Appeals of West Virginia rejected the grantor's argument. The court stated: "Based upon the foregoing authority, this Court holds that a deed drawn and executed in anticipation of the creation of the grantee as a corporation, limited liability company, or other legal entity entitled to hold real property is not invalidated because the grantee entity had not been established as required by law at the time of such execution, if the entity is in fact created thereafter in compliance with the requirements of law and the executed deed is properly delivered to the entity, the grantee, after its creation." (*Heartland, supra*, 632 S.E.2d at p. 303.)

*John Davis* and *Heartland* are consistent with cases in other jurisdictions which have addressed this issue. (See, e.g., *Corporate Dissolution v. Rawson-Sweet* (2006) 132 Wn.App. 903 [134 P.3d 1188, 1194] ["A deed to a corporation made before its organization is valid between the parties but is void when asserted against third parties. [Citations.] Title passes when the corporation is legally incorporated"]; *Community Credit Union v. Federal Express* (D.C. 1987) 534 A.2d 331, 334 [same].)

■ Based on the foregoing persuasive authority, this court holds that a quitclaim deed transferring property to the trustee of a trust is not void as between the grantor and grantee merely because the trust had not been created at the time the deed was executed, if (1) the deed was executed in anticipation of the creation of the trust and (2) the trust is in fact created thereafter. Such a deed is valid between the grantor and grantee on the date the trust was formed.

Applying this rule to the facts of this case, there was substantial evidence for the trial court to infer that on August 13, 2006, when Al executed the quitclaim deed, he anticipated the Trust would be formed. The quitclaim deed itself referred to the "the Luna Trust" and to Al, as its trustee. There was also evidence that on August 8, 2006, someone informed Gloria in Al's presence that "Al wants you and Ann to sign for [the] trust." Moreover, after the quitclaim deed was executed, the Trust was in fact established and the quitclaim deed was recorded. Under these circumstances, the quitclaim deed was not void simply because the Trust was not formed when the quitclaim

deed was executed. Rather, the quitclaim deed was deemed legally delivered on August 29, 2006, when the Trust was established.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.